UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| GRETCHEN BAGLEY, individually and on behalf of all others similarly situated, | Case No. |
| *Plaintiff*, | **CLASS ACTION COMPLAINT** |
| *v.* | **DEMAND FOR JURY TRIAL** |
| COMMUNITY MINERALS II, LLC, a Wyoming corporation, | |
| *Defendant.* | |

## CLASS ACTION COMPLAINT

Plaintiff Gretchen Bagley ("Plaintiff Bagley" or "Bagley") brings this Class Action Complaint and Demand for Jury Trial against Defendant Community Minerals II, LLC ("Defendant" or "Community Minerals") to stop the Defendant from violating the Telephone Consumer Protection Act ("TCPA") by making pre-recorded telemarketing calls to consumers without consent, in addition to placing unsolicited calls and text messages to phone numbers that are registered on the National Do Not Call registry ("DNC"). Plaintiff also seeks injunctive and monetary relief for all persons injured by Defendant's conduct. Plaintiff Bagley, for this Complaint, alleges as follows upon personal knowledge as to herself and her own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by her attorneys.

### PARTIES

1.      Plaintiff Bagley is a resident of Navarre, Ohio.

2.      Defendant Community Minerals is a Wyoming registered company headquartered in Houston, Texas.

**JURISDICTION AND VENUE**

3.      This Court has Federal question subject matter jurisdiction over this action under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA").

4.      Venue is proper and this Court has personal jurisdiction over the Defendant since the Defendant made calls into this District and conducts business in this District.

**INTRODUCTION**

5.      As the Supreme Court recently explained, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back." *Barr v. Am. Ass'n of Political Consultants*, No. 19-631, 2020 U.S. LEXIS 3544, at *5 (U.S. July 6, 2020).

6.      When Congress enacted the TCPA in 1991, it found that Americans were receiving more than 18 million robocalls every day. 105 Stat. 2394 at § 2(3).

7.      By 2003, due to more powerful autodialing technology, Americans were receiving more than 100 million robocalls every day. In re Rules and Regulations Implementing the TCPA of 1991, 18 FCC Rcd. 14014, ¶¶ 2, 8 (2003).

8.      The problems Congress identified when it enacted the TCPA have only grown exponentially in recent years.

9.      Industry data shows that the number of robocalls made each month increased from 831 million in September 2015 to 4.7 billion in December 2018—a 466% increase in three years.

10.     According to online robocall tracking service "YouMail," 4.3 billion robocalls were placed in July 2024 alone, at a rate of 138.6 million per day. www.robocallindex.com (last visited August 11, 2024).

11.     The FCC also has received an increasing number of complaints about unwanted calls, with 150,000 complaints in 2016, 185,000 complaints in 2017, and 232,000 complaints in 2018. FCC, Consumer Complaint Data Center, www.fcc.gov/consumer-help-center-data.

12.     "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting off Robocalls* (July 22, 2016), statement of FCC chairman.[1]

13.     "The FTC receives more complains about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016).[2]

## COMMON ALLEGATIONS

14.     Community Minerals purchases mineral or royalty rights from consumers throughout the US.[3]

15.     Community Minerals places calls and text messages to consumers to generate business for its mineral purchases.

16.     The calls and text messages that Community Minerals places are for the purpose of a solicitation.

---

[1] https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls
[2] https://www.ftc.gov/system/files/documents/advocacy_documents/comment-staff-ftc-bureau-consumer-protection-federal-communications-commission-rules-regulations/160616robocallscomment.pdf
[3] https://www.communityminerals.com/about-us

17.     According to Ilios Resources, a mineral rights purchaser, companies purchase mineral rights/royalties at a lower value than what the minerals are worth to generate a profit:

## #4 Not Getting Fair Value

Sadly, it's not uncommon for companies to give offers that are far lower than what your mineral rights royalties are truly worth. Yes, every business has to make a profit, including Ilios Resources.

However, the gap between "fair market value" and the offers some mineral owners walk into our offices with can be astounding.

**Don't rush into anything. Get more than one offer. Consult a trusted professional who knows your market. Do a little market research. Which is just a fancy way of saying it's always a good idea to talk to your neighbors.**

It's rare when you're the only person on the block who got an offer. Put your feelers out there and make sure the comparables aren't an exaggerated tactic to get you to sell. [4]

18.     Consumers have posted reports online about low offers that they received from Community Minerals for their mineral rights, including:

- "Sales rep who was trying to buy my natural gas rights told me directly that they will be worthless in the near future. Then why are you trying to buy them?"[5]

- "Not anywhere close to what they're worth. These unsolicited offers are always pennies on the dollar in offers, they have no interest in paying full value, and are hoping to land a sucker or someone desperate for money. Never ever ever sell mineral rights - unless you've got no heirs and a good attorney who knows what they are worth."[6]

19.     When a consumer sells mineral rights/royalties to Community Minerals, they are doing so for a value that is lower than what the rights/royalties are worth, resulting in what is a cost of doing business with Community Minerals.

---

[4] http://iliosresources.com/mineral-rights-royalties-flags/
[5] https://www.google.com/search?q=%22community+minerals
[6] Id.

20.    Defendant Community Minerals places unsolicited calls and text messages to consumers to generate business, including calls and texts to phone numbers that are registered on the DNC, as per Plaintiff's experience.

21.    On the Community Minerals website, the Defendant explains how it acquires consumer contact information, claiming that this information is found in public records:

### How did you get my contact information?    −

We research and identify prospective customers from publicly available records found in County Courthouses. These public records include oil and gas leases, deeds, and other relevant filings that include information that we use to reach out to our potential customers. [7]

22.    Based on the above, Community Minerals does not have any type of consent from consumers like Plaintiff Bagley to place solicitation calls or send solicitation text messages.

23.    To make matters worse, Community Minerals places unsolicited pre-recorded calls to consumers.

24.    Consumers have captured and posted pre-recorded calls online that they received from Community Minerals, including:

---

[7] https://www.communityminerals.com/offer/#faq02



# (713) 234-0295 is a Business Online Listing Robocall

Be cautious.

| LISTEN | ▶ 0:00 / 0:26 |
|---|---|

**TRANSCRIPT** *Hi, I'm calling on behalf of Community Minerals. We've helped thousands of satisfied mineral owners sell their minerals. Hassle free. Visit our Better Business Bureau profile or check us out on Google and Facebook to hear more from our happy customers. Feel free to give us a call at 713-234-0295 to see if you can qualify for an offer. Thanks and have a great day.*

**DATE BLOCKED** April 6, 2023

**CALL ACTIVITY** `Low` **Last detected 1 year ago** [8] [9]

# (713) 234-0298 is a Robocall

Be cautious.

| LISTEN | ▶ 0:00 / 0:25 |
|---|---|

**TRANSCRIPT** *Hi, I'm calling on behalf of Community Minerals. You can join thousands of satisfied mineral owners across the US who sold their minerals for a lump sum cash payment. Our team has helped thousands of mineral owners just like you, and we're committed to providing excellent service every step of the way. To see if you can qualify for an offer, please call us at 713-234-0298. Have a great day.*

**DATE BLOCKED** April 11, 2023

**CALL ACTIVITY** `Low` **Last detected 1 year ago** [10] [11]

25.    In addition, other consumers have reported online that they received pre-recorded calls from Community Minerals, including:

---

[8] https://www.nomorobo.com/lookup/713-234-0295
[9] https://nomorobo-twilio-recordings.s3.amazonaws.com/honeypot/RE9e2f2691f1ec5459d96fe216f9402b0b
[10] https://www.nomorobo.com/lookup/713-234-0298
[11] https://nomorobo-twilio-recordings.s3.amazonaws.com/honeypot/REcd8617beaffcf85c6325117e0bea99b5

26.     Consumers have posted online complaints about unsolicited calls and text messages that they received from Community Minerals, including complaints about pre-recorded calls and complaints from consumers who registered their phone number on the DNC:

- "This business appears to be utilizing ***robocalls and calling people on the FTC Do Not Call list*** illegally."[13] (emphasis added)

- "I got an unsolicited call from this company, from a privatized number, which rang for a fraction of a second, then left me a voicemail. I called the number back to have my number removed from the calling list. The associate wanted my name in addition to my phone number (well, now you have it)! The words surreptitious and opaque comes to mind."[14]

- "These a-holes keep calling me for my mineral rights. I don't own land, and my ***number is on the national do not call registry***. If they do this to you, file a compliant. You can do a search. Place your number on the registry, and when they call, then go to the website and file a complaint."[15] (emphasis added)

- "They utilize ***robocall spam*** tactics to hound people. Refuse to stop calling despite direct requests and ignore the ***National Do Not Call registry***."[16] (emphasis added)

- "This is not a legit business as they are using ***robo-calls*** and robo-texts to do unsolicited contact to people to see if they want to sell their mineral rights."[17] (emphasis added)

- "Not dealt with them, but they call or text every few weeks and have done so the last six months or so to buy mine in Brazos Cty. Seems like they (along with lots

---

[12] https://callfilter.app/12145507502
[13] https://www.google.com/search?q=%22community+minerals
[14] Id.
[15] Id.
[16] Id.
[17] Id.

of these mineral owning companies) shoot a spray pattern and see what they hit/buy"[18]

- "I get them all of the time for mineral rights I own. I have a special place I put them before I take the rest of the mail inside. They also call my cellphone. So annoying."[19]

- "They spam you with *unsolicited robo calls* from different area codes. This has been going on for a few weeks. If I was looking to sell my mineral rights, they would be the last company I would deal with based on these unethical practices alone."[20] (emphasis added)

- "I've received mailers and *machine phone calls* from Community Minerals quite a few times…"[21] (emphasis added)

27.     In response to these calls and text messages, Plaintiff Bagley brings forward this case seeking injunctive relief requiring the Defendant to cease from violating the TCPA, as well as an award of statutory damages to the members of the Classes and costs.

**PLAINTIFF BAGLEY'S ALLEGATIONS**

28.     Plaintiff Bagley is the sole owner and user of her cell phone number ending in 5224.

29.     Plaintiff Bagley registered her cell phone number on the DNC on July 9, 2003.

30.      Plaintiff Bagley uses her cell phone number for personal use only as one would use a landline telephone number in a home, including to communicate with family and friends.

31.     Plaintiff Bagley has never advertised her cell phone number online or used it for business purposes.

32.     The calls that Plaintiff Bagley received from Community Minerals were received more than 31 days after the Plaintiff registered her cell phone number on the DNC.

33.     On July 17, 2024 at 2:36 PM, Plaintiff Bagley received an unsolicited call to her cell phone from 214-550-7598.

---

[18] https://texags.com/forums/57/topics/3466653
[19] Id.
[20] https://www.bbb.org/us/tx/houston/profile/minerals/community-minerals-llc-0915-90059849/customer-reviews
[21] https://www.mineralrightsforum.com/t/community-mineral-company/69192/4

34. This call was not answered, but a pre-recorded voicemail was left:



35. The voicemail clearly states that it is from Community Minerals.

36. When 214-550-7598 is called, the answering system identifies the company name Community Minerals.

37. The same message is heard when calling 214-550-7548.

38. Plaintiff Bagley believes this voicemail was pre-recorded because the voice sounds robotic and artificial, and the pauses and intonation are unnatural.

39. On July 22, 2024 at 2:54 PM, Plaintiff Bagley received an unsolicited text message to her cell phone from 281-779-4898:

---

[22] https://www.dropbox.com/scl/fi/d1phqbmoh5108w7q9m8nx/voicemail-1-12941346304.m4a?rlkey=qfh7my5zmkvrdlbtcztg0h8j0&dl=0



40.    This text message clearly states that it was sent by Community Minerals.

41.    On July 23, 2024 at 11:18 AM, Plaintiff Bagley received an unsolicited call to her cell phone from 830-741-8480.

42.    This call was not answered, but a pre-recorded voicemail was left:

10

1

2

3

4

5

6

7

8

9

10

11



12     43.     The voicemail clearly states that it is from Community Minerals.

13     44.     When 830-741-8480 is called, the answering system identifies the company name

14  Community Minerals.

15     45.     The same message is heard when calling 214-550-7436.

16

17     46.     Plaintiff Bagley believes this voicemail was pre-recorded because the voice sounds

18  robotic and the pauses and intonation are unnatural.

19     47.     On July 29, 2024 at 3:37 PM, Plaintiff Bagley received an unsolicited text message

20  to her cell phone from 281-779-4898:

21

22

23

24

25

26

27  [23] https://www.dropbox.com/scl/fi/t23oy2uwpofrulj5mhzlc/voicemail-2-
12940814528.m4a?rlkey=8p078szv5904c4p67upb877xh&dl=0

28

11



48.     As with the previous text, this one clearly states that it was sent by Community Minerals.

49.     On July 30, 2024 at 1:25 PM, Plaintiff Bagley received an unsolicited call to her cell phone from 346-202-0492.

50.     This call was not answered but a pre-recorded message was left:



51.     The voicemail clearly states that it is from Community Minerals.

52.     When 346-202-0492 is called, the answering system identifies the company name Community Minerals.

53.     The same message is heard when calling 214-550-7061.

54.     Plaintiff Bagley believes this voicemail was pre-recorded because the voice sounds robotic and the pauses and intonations sound like a robot or are artificially created.

55.     On August 5, 2024 at 11:06 AM, Plaintiff Bagley received an unsolicited text message to her cell phone from 281-779-4898:

---

24 https://www.dropbox.com/scl/fi/u7xotrmfogn0kib5n6k6z/voicemail-3-12892146688.m4a?rlkey=eae8he3ly4ipxtakvk56v11af&dl=0

13

1
2
3
4
5
6
7
8
9
10
11



12   56.    As with the previous texts, this one clearly states that it was sent by Community

13  Minerals.

14   57.    Plaintiff Bagley is not and was not looking to sell mineral rights/royalties.

15   58.    Plaintiff Bagley has never done business with Community Minerals.

16

17   59.    The unauthorized solicitation telephone calls and texts that Plaintiff received from

18  or on behalf of Defendant have harmed Plaintiff Bagley in the form of annoyance, nuisance, and

19  invasion of privacy, occupied her phone line, and disturbed the use and enjoyment of her phone.

20   60.    Seeking redress for these injuries, Plaintiff Bagley, on behalf of herself and Classes

21  of similarly situated individuals, brings suit under the TCPA.

22                              **CLASS ALLEGATIONS**

23   61.    Plaintiff Bagley brings this action pursuant to Federal Rules of Civil Procedure

24  23(b)(2) and 23(b)(3) and seeks certification of the following Classes:

25

26   **<u>Pre-recorded No Consent Class</u>:** All persons in the United States who from four
    years prior to the filing of this action through class certification (1) Defendant

27

28

                                                                              14

Community Minerals called on their cellular telephone number (2) using an artificial or pre-recorded voice.

**Do Not Call Registry Class:** All persons in the United States who from four years prior to the filing of this action through class certification (1) Defendant Community Minerals called/texted more than one time, (2) within any 12-month period, (3) where the person's residential telephone number had been listed on the National Do Not Call Registry for at least thirty days, (4) for substantially the same reason Defendant called/texted Plaintiff.

62.     The following individuals are excluded from the Classes: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, its subsidiaries, parents, successors, predecessors, and any entity in which either Defendant or its parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiff's attorneys; (4) persons who properly execute and file a timely request for exclusion from the Classes; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against the Defendant have been fully and finally adjudicated and/or released. Plaintiff Bagley anticipates the need to amend the Class definitions following appropriate discovery.

63.     **Numerosity and Typicality**: On information and belief, there are hundreds, if not thousands of members of the Classes such that joinder of all members is impracticable, and Plaintiff is a member of the Classes because he received calls as part of the same campaign resulting in calls to other Class members.

64.     **Commonality and Predominance**: There are many questions of law and fact common to the claims of the Plaintiff and the Classes, and those questions predominate over any questions that may affect individual members of the Classes. Common questions for the Classes include, but are not necessarily limited to the following:

(a) whether Defendant Community Minerals or its agents placed pre-recorded voice message calls to Plaintiff Bagley and members of the Pre-recorded No Consent Class without first obtaining consent to make the calls;

    (a)    whether Defendant Community Minerals or its agents placed pre-recorded voice message calls to Plaintiff Bagley and members of the Pre-recorded No Consent Class without first obtaining consent to make the calls;

    (b)    whether Defendant Community Minerals placed multiple calls and/or text messages within a 12-month period to Plaintiff and other consumers whose telephone numbers were registered with the DNC for at least 30 days of the time of each call/text;

    (c)    whether the calls and text messages constitute a violation of the TCPA;

    (d)    whether Class members are entitled to an injunction against Defendant preventing it from making unsolicited prerecorded calls; and

    (e)    whether members of the Class are entitled to treble damages based on the willfulness of Defendant's conduct.

65.    **Adequate Representation**: Plaintiff Bagley will fairly and adequately represent and protect the interests of the Classes, and has retained counsel competent and experienced in class actions. Plaintiff Bagley has no interests antagonistic to those of the Classes, and the Defendant has no defenses unique to Plaintiff. Plaintiff Bagley and her counsel are committed to vigorously prosecuting this action on behalf of the members of the Classes, and have the financial resources to do so. Neither Plaintiff Bagley nor her counsel have any interest adverse to the Classes.

66.   **Appropriateness**: This class action is also appropriate for certification because Defendant acted or refused to act on grounds generally applicable to the Classes and as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Classes and making final class-wide injunctive relief appropriate. Defendant's business practices apply to and affect the members of the Classes uniformly, and Plaintiff's challenge of those practices hinges on Defendant's conduct with respect to the Classes as wholes, not on facts or law applicable only to Plaintiff Bagley Additionally, the damages suffered by individual members of the Classes will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the members of the Classes to obtain effective relief from Defendant's misconduct on an individual basis. A class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

### FIRST CLAIM FOR RELIEF
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff Bagley and the Pre-recorded No Consent Class)**

67.   Plaintiff repeats and realleges the prior paragraphs of this Complaint and incorporates them by reference herein.

68.   Defendant Community Minerals transmitted unwanted solicitation telephone calls to Plaintiff Bagley and the other members of the Pre-recorded No Consent Class using a pre-recorded voice message.

69.   These pre-recorded voice calls were made *en masse* without the prior express written consent of the Plaintiff Bagley and the other members of the Pre-recorded No Consent Class.

70.   The Defendant has, therefore, violated 47 U.S.C. § 227(b)(1)(A)(iii). As a result of

17

Defendant's conduct, Plaintiff Bagley and the other members of the Pre-recorded No Consent Class are each entitled to a minimum of $500 in damages, and up to $1,500 in damages, for each violation.

**SECOND CLAIM FOR RELIEF**
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff Bagley and the Do Not Call Registry Class)**

71.     Plaintiff repeats and realleges paragraphs 1-66 of this Complaint and incorporates them by reference herein.

72.     The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered her or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

73.     Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" may bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object.  47 U.S.C. § 227(c).

74.     Defendant violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as Plaintiff Bagley and the Do Not Call Registry Class members who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

75.     Defendant violated 47 U.S.C. § 227(c)(5) because Plaintiff Bagley and the Do Not Call Registry Class received more than one telephone call and/or text message in a 12-month

18

period made by or on behalf of the Defendant in violation of 47 C.F.R. § 64.1200, as described above.

76.     As a result of Defendant's conduct as alleged herein, Plaintiff Bagley and the Do Not Call Registry Class suffered actual damages and, under section 47 U.S.C. § 227(c), are entitled, inter alia, to receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200.

77.     To the extent Defendant's misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the Do Not Call Registry Class.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff Bagley individually and on behalf of the Classes, prays for the following relief:

    a)  An order certifying this case as a class action on behalf of the Classes; appointing Plaintiff as the representative of the Classes; and appointing her attorneys as Class Counsel;

    b)  An award of damages and costs;

    c)  An order declaring that Defendant's actions, as set out above, violate the TCPA;

    d)  An injunction requiring Defendant to cease all unsolicited calling activity, and to otherwise protect the interests of the Classes; and

    e)  Such further and other relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiff Bagley requests a jury trial.

            **GRETCHEN BAGLEY**, individually and on behalf of all others similarly situated,

DATED this 19th day of September, 2024.

By: /s/ *Brian T. Giles*

Brian T. Giles (0072806)
Giles & Harper, LLC
7247 Beechmont Avenue,
Cincinnati, Ohio 45230
Telephone: (513) 379-2715
bgiles@gilesharper.com

Avi R. Kaufman
kaufman@kaufmanpa.com
**KAUFMAN P.A.**
237 South Dixie Highway, Floor 4
Coral Gables, FL 33133
Telephone: (305) 469-5881

*Attorneys for Plaintiff and the putative Classes*